# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6599 | **DATE** | August 23, 2001 |
| **CASE TITLE** | Holland Co. v Zeftek, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 9/12/01, at 9:00 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Memorandum opinion and order entered.

Accordingly, defendant's motion for summary judgment is denied.

(11) ☐ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | AUG 2 4 2001 | |
| | Notified counsel by telephone. | | date docketed | 27 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 AUG 23 PM 2: 29 | date mailed notice | |
| GDS | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HOLLAND COMPANY, an Illinois corporation, )
)
    Plaintiff, )
)
    v. )   No.   00 C 6599
)
)   Judge Robert W. Gettleman
ZEFTEK, INC., an Illinois corporation, )
)
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Holland Company has sued defendant Zeftek, Inc. for infringement of Patent No. 6,041,714 ("the '714 patent"). Defendant has moved for summary judgment of noninfringement.[1] For the reasons set forth below, defendant's motion is denied.

### Facts

Plaintiff is a corporation engaged in the design, manufacture and sale of rail car accessories. As part of its business, plaintiff sells rail car center bowl liners that fit within the metal center bowl of a rail car "truck" between the kingpin on the rail car and the center bowl. The liners are designed to dissipate static electricity that would otherwise build when the rail car is in use.

Plaintiff is the owner of the '714 patent, which was initially filed on October 14, 1997, and issued on March 28, 2000, and is entitled "Statically Dissipative, Non-Metallic Center Bowl

---

[1] Defendant actually filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), but argued in its memorandum that the motion should be treated as one for summary judgment under Rule 56 because it presented matter outside the pleading. The court and plaintiff agreed, and have treated defendant's motion as seeking summary judgment under Rule 56. It is unclear, however, why defendant did not simply file a Rule 56 motion initially.

Liner for Railroad Cars." Plaintiff sells center bowl liners that comprise a commercial embodiment of one or more of the inventions claimed in the '714 patent.

Defendant, also an Illinois corporation, manufactures and sells wear maintenance and replacement parts for the rail car industry, including center bowl liners. By January 1997, defendant had developed a center bowl liner that was made of a self-lubricating ultra-high molecular weight polyethylene (UHMAW-PE), which included a substantially annular conductive portion integrally molded to an outer substantially annular non-conductive load-bearing portion filled with reinforcing particles. The outer load-bearing portion was made from PPD Resistall plastic, provided to defendant by a company called PPD UHMW for testing in 1996. PPD has been manufacturing defendant's center bowl liners having inner substantially annular conductive portions and outer substantially annular non-conductive load-bearing portions since 1997. To make the annular conductive portion of defendant's center bowl liners, PPD mixes a carbon black material in the UHMW-PE. The material is called PPD FLCA11, and is provided by a division of PPD Grupe. The annular conductive portion of defendant's center bowl liners have at least 6.8% by weight PPD FLCA11. The outer annual non-conductive portion of the center bowl liners do not contain any conductive particles.

Defendant filed a non-provisional patent application on its center bowl liners on September 9, 1997. It obtained Patent No. 5-908-001 ("the '001 patent") for its center bowl liners on June 1, 1999. Defendant's center bowl liners fall under the scope of claim 1 of defendant's '001 patent.

Plaintiff's '714 patent was filed on October 4, 1997. The '714 patent claimed priority based on United States Provisional Application Number 60/042.008, filed on March 28, 1997.

Claim 11 of the '714 patent is substantially identical to claim 1 of the '001 patent. The only difference between the claims is that claim 11 of th '714 patent does not include the limitation of the reinforcing particles in the load-bearing portion.

## Summary Judgment Standard

A movant is entitled to summary judgment under Fed. R. Civ. P. 56 when the moving papers and affidavits show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Becker v. Tennenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993). The moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

## Discussion

Defendant has moved for summary judgment of non-infringement, arguing that claim 11 of the '714 patent, when properly construed, does not read on defendant's center bowl liners. In particular, defendant argues that the claimed invention in the '714 patent is limited to the conductive portion of the bowl liner including less than 5% by weight conductive material, and that the conductive ring disclosed in claim 11 must be so limited. Once so limited, because the conductive portion of defendant's liners include 6.8% by weight conductive material, defendant's liners do not infringe claim 11.[2]

The determination of whether an accused device infringes a patent requires a two-step analytical approach. First, the claims of the patent must be construed to determine the proper scope. Second, a determination must be made as to whether the properly construed claims read on the accused device. Interactive Gift Express Inc. v. Compuserve, Inc., 231 F.3d 859, 864 (Fed. Cir. 2000). With respect to the first step, claim construction, "[w]hen the meaning or scope of a patent claim is in dispute the court construes the claim as a matter of law." Jackson v. Casio PhoneMate, Inc., 105 F. Supp. 2d 858, 863 (N.D. Ill. 2000). Only those terms in controversy need be construed, and only to the extent necessary to resolve the controversy. Id. To construe the claims, the court first examines the intrinsic evidence, which consists of the patent claims, specification, and, if in evidence, the prosecution history. Id. If the intrinsic evidence alone is insufficient, extrinsic evidence may be used. Extrinsic evidence is external to the patent and file

---

[2]Defendant's motion was directed to all 13 claims of the '714 patent. In response to the motion, based on defendant's representation that its center bowl liner contains 6.8% by weight of conductive material, plaintiff has withdrawn any assertion that defendant's liners infringe claims 1 - 10 and 12 - 13. Thus, the only issue before the court is whether defendant's center bowl liners infringe claim 11 of the '714 patent.

4

history, such as expert testimony, inventor testimony, dictionaries, technical treatises, articles, and prior art not cited in the intrinsic record. Id. Intrinsic evidence is preferred because it encompasses the materials in the public record. Therefore, if the intrinsic evidence alone resolves any ambiguity, it is improper to rely on extrinsic evidence. Id.

Not all intrinsic evidence is equal, however, and the Federal Circuit has delineated a hierarchy. Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1577 (Fed. Cir. 1996). First, the court examines the language of the claim. Id.; Pitney Bowes, Inc. v. Hewlett Packard Co., 182 F.3d 1298, 1305 (Fed. Cir. 1999) ("The starting point for any claim construction must be the claims themselves."). Then, the court looks to the rest of the intrinsic evidence, beginning with the specification and concluding with the prosecution history. Id. at 15.

If the claim language is clear on its face, the court's consideration of the rest of the intrinsic evidence is "restricted to determining if a deviation from the clear language of the claims is specified. A deviation may be necessary if 'a patentee [has chosen] to be his own lexicographer and used terms in a manner other than their ordinary meaning.'" Interactive Gift, 231 F.3d at 865 (quoting Vitronics, 90 F.3d at 1582). A deviation may also be necessary if a patentee has relinquished a potential claim construction in an amendment to the claim or in an argument to overcome or distinguish a reference. Id. If, on the other hand, the claim language is not clear on its face, then the court considers the rest of the intrinsic evidence to resolve, if possible, the lack of clarity. Id.

When referring to the specification to construe claim terms, the court must take care to "avoid reading limitations in the specification . . . into [the] claims." Id. (quoting Intervet Am. Inc. v. Kee-Vet Lab, Inc., 887 F.2d 1050, 1053 (Fed. Cir. 1989). There is a fine line between

reading a claim in light of the specification, and reading a limitation into the claim from a specification. Id. at 866 (citing Comark Communications Inc. v. Harris Corp., 156 F.3d 1182, 1186 (Fed. Cir. 1998). In locating this fine line the court must remember that it looks "to the specification to ascertain the meaning of the claim term as it is used by the inventor in the context of the entirety of his invention, not merely to limit the claim term." Id.

The court begins, as it must with the language of claim 11 (Vitronics, 90 F.3d at 1582):

In a center plate assembly on a railroad car wherein said assembly includes a bolster center plate and a floor was aligned with the center plate by a kingpin, and a self-lubricating plastic bearing liner between a center plat planar wall and a floor wall, the improvement in said plastic bearing liner which includes:

    an aperture for receiving said kingpin,

    an outer load-bearing ring portion, and

an inner electrically conductive ring integrally molded to said load-bearing portion and of substantially the same thickness as the load-bearing portion, both rings being disposed between and engaging the planar wall and floor wall with the conductive ring establishing electrical conductivity between the planar wall and floor wall,

said outer and inner rings each having an upper and lower contact surface engaging said center plates and floor wall, respectively,

the total area of said upper contact surface of said outer portion being substantially larger than the total area of said upper contact surface of said inner portion,

said load-bearing portion being of an ultra-high molecular weight polyethylene and said conductive portion being of an ultra-high molecular weight polyethylene filled with conductive particles.

'714 patent, column 9, line 11- column 10, line 25.

As is readily apparent, claim 11 has no explicit requirement that the percentage weight of conductive material be no more than about 5%. Nor is there any term in claim 11 that can be

6

construed to require a conductive ring portion having 5% or less by weight of carbon black. Indeed, despite the Federal Circuit's unambiguous directive that "a party wishing to use statements in the written description to confine or otherwise affect a patent's scope must, at the very least, point to a term or terms in the claim with which to draw in those statements," Renishaw PLC v. Marposs Societa" Per Azioni, 158 F3d 1243,1248, (Fed Cir.1998), defendant's motion does not ask the court to construe any specific term of claim 11, but rather asks the court to read a limitation into the claim "in view of the intrinsic evidence." The court should construe claim 11 as so limited, defendant argues, for two reasons. First, defendant argues that claim 11 is limited by certain disclosures in the specification. Second, defendant argues that the file prosecution history requires a 5% by weight of carbon black limitation.

With respect to the specification, defendant argues that plaintiff limited the scope of claim 11 to the specific embodiment disclosed. See Watts v. XL Sys., Inc., 232 F.3d 877, 879, 882-83 (Fed. Cir. 2000). In particular, plaintiff relies on a line in the '714 patent (column 6, line 17-19) stating: "Including too much carbon black mixed with the plastic interferes with the self-lubricating properties of the UHMW-PE." This line, according to defendant, indicates that the invention itself is limited to an upper limit of about 5% by weight of carbon black.

The problem with this argument is twofold. First, just two lines later the patent states: "Because the instant invention relies on the advantages of the self-lubricating UHMW-PE material, the 5% limit for the urethane wear plates provide substantiation for the upper limit of applicant's range of carbon black. It is not, however, an absolute upper limit because of the different properties of the urethane and self-lubricating UHMW-PE." ('714 patent, column 6, lines 24-30)(emphasis added). Second, as defendant itself points out, both passages are directed

7

to the embodiment shown in FIGS. 2-4, which illustrate a center bowl liner that is entirely conductive, rather than the conductive ring of claim 11, an embodiment of which is disclosed FIGS. 7-8.

Next, defendant argues that the specification specifically limits the conductive ring of the embodiment covered by claim 11 by stating that "disc portion 246 has two major subdivisions, a conductive ring 270 which has the disclosed 2% to about 5% conductive material molded or entrained in the plastic . . .." ('714 patent, line 265-column 7, line 3.) Defendant argues that this statement indicates that 2% to about 5% is the only range for the conductive ring.

The problem with this argument is that FIGS. 7 and 8 are simply illustrating a preferred embodiment. "FIGS. 7 and 8 show another approach . . .." (Id., column 6, line 63.) "There are mechanical and electrical conductivity improvements in this embodiment." (Id., column 6, lines 66-67.) The court cannot read a limitation of one of several embodiments into a claim. Laitram Corp. v. Cambridge Wire Cloth Co., 863 F.2d 885, 865 (Fed. Cir. 1989) (references to a preferred embodiment, such as those often present in a specification, are not claim limitations). This is particularly true where, as here, the specification clearly indicates that it is not intended to limit the claims.

> As many and varied modifications of the subject matter of this invention will become apparent to those skilled in the art from the detailed description given here and above, it will be understood that the present invention is limited only as provided in the claims appended hereto. ['714 patent, column 8, lines 15-19.]

Accordingly, the court concludes that the specification does not require that claim 11 be limited in the manner urged by defendant. To do so would be to commit a cardinal sin of patent

law -- reading a limitation from the written description into a claim. See Comark Communications, Inc. v. Harris Corp., 156 F.3d 1182, 1186 (Fed. Cir. 1998).[3]

Defendant's second argument for reading the percentage by weight of carbon black limitation into claim 11 is based on the prosecution history. Defendant argues that throughout the prosecution of the '714 patent, plaintiff argued that the percentage by weight limitations were not taught by the prior art and were critical to the patentability of the invention.

None of the prosecution history relied on by defendant, however, refers to claim 11. Claim 11 was added in the last amendment, and accepted by the examiner as submitted without amendment. Indeed, the prosecution history indicates that plaintiff stated that claims 12 and 13 (the claims dependent on claim 11) "use the particle percentage limitations, but are not necessary to the patentability of this claim approach as no prior art teaches the conductive ring approach." ('714 patent, Pros. Hist. P.63.) Therefore, with respect to claim 11, no percentage by weight limitation was required to distinguish prior art.

Finally, as plaintiff argues, defendant's proposed construction of claim 11 would violate the doctrine of claim differentiation by rendering claim 12 superfluous. The limitation defendant seeks to "read into" broad, independent claim 11, is specifically contained in the narrow, dependent claim 12. "Where some claims are broad and others narrow, the narrow claim

---

[3]Defendant's reliance on SciMed Life Sys. v. Advanced Cardiovascular, Sys., 242 F.3d 1337, 1340 (Fed. Cir. 2001), on this point is misplaced. In SciMed, the court noted that the "common specification," such as the abstract, indicated that the claimed invention supported the limitation. Id. at 1342. In the instant case, the portions of the specification relied on by defendant are not found in the common specification, but in the description of specific preferred embodiments relating to separate claims. In this regard, the instant case is more akin to Comark, in which the court rejected the limiting language in the specification because it was "clearly found in the '904 patent's description of the preferred embodiment." Comark, 156 F.3d at 1187.

9

limitations cannot be read into the broad whether to avoid invalidity or to escape infringement." Deere & Co. v. Int'l Harvestor Co., 658 F.2d 1137, 1141 (7th Cir. 1981). As the Federal Circuit stated in D.M.I. Inc. v. Deere & Co., 755 F.2d 1570, 1574 (Fed. Cir. 1985):

> Where, as here, the limitations sought to be 'read into' a claim already appears in another claim, the rule is far more than 'general.' It is fixed. It is long and established. It enjoys an immutable and universally applicable status comparatively rare among rules of law. Without it, the entire statutory and regulatory structure governing the drafting, submission, examination, allowance and enforceability of claims would crumble.

Accordingly, the court rejects defendant's argument that claim 11 must be construed as containing a percentage by weight limitation of between 2% and about 5% carbon black. Therefore, defendant's motion for summary judgment of non-infringement is denied.

## Conclusion

For the reasons set forth above, defendant's motion for summary judgment of non-infringement is denied. This case is set for a report on status September 12, 2001, at 9:00 a.m.

**ENTER:** **August 23, 2001**

Robert W. Gettleman
United States District Judge